**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSETTA WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:17-cv-1268 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF MAPLEWOOD, MISSOURI, | ) | |
| MARTIN CORCORAN, in his individual | ) | |
| capacity, STEPHEN KRUSE, in his | ) | |
| individual capacity, and ANTHONY | ) | |
| TRAXLER, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## INTRODUCTION

1.     Plaintiff Rosetta Watson, a former resident of Maplewood, Missouri, was a victim of repeated domestic violence and needed to contact and rely on police from the City of Maplewood ("Maplewood") for protection and assistance at her rental home. As a result, Maplewood ordered her to leave her home and banned her from living anywhere in Maplewood for six months.

2.     Defendants – Maplewood, Maplewood City Manager Martin Corcoran, Maplewood Chief of Police Stephen Kruse, and Maplewood Director of Public Works and Assistant City Manager Anthony Traxler – enacted and enforced laws that authorize the City to bar residents from living in Maplewood when they call police for assistance with domestic violence, or when arrests occur at their homes, even if the tenants were the victims of crime.

3.     The laws in question include Chapter 12, Article II of the Maplewood Code of Ordinances, § 12-25, which requires every resident to obtain and maintain an occupancy permit

1

from the City, and Chapter 34, Article VIII of the Maplewood Code of Ordinances, §§ 34-240 et seq., which defines nuisances and authorizes officials to revoke a resident's occupancy permit if the nuisance is not abated. Hereinafter, these two sections will be referred to collectively as the Maplewood "Nuisance Policy." *See Exhibit A – Maplewood Code of Ordinances* (hereinafter, "Maplewood Code").

4.      Under Maplewood's Nuisance Policy, nuisances include, for example: more than two incidents of domestic violence resulting in calls to the police within a 180-day period; more than two instances of acts prohibited by state or city law that have resulted in arrests within a 180-day period; and commission of acts prohibited by federal or state law which have resulted in felony-level arrests two or more times within 90 days. Maplewood Code § 34-240(17).

5.      Maplewood does not exempt situations where a tenant is the victim of the domestic violence or other unlawful conduct.

6.      The Nuisance Policy empowers the City to pursue abatement by any measures necessary to cause its cessation and the prevention of its recurrence. Maplewood Code § 34-242(2)(e). Once the City finds that occupants have committed a nuisance, it can revoke their occupancy permits and deny future occupancy permits for up to six months.

7.      Housing security and access to police assistance are often essential to domestic violence victims' ability to escape life-threatening violence and live free from abuse. Yet, domestic violence victims continue to face barriers to reporting the abuse to law enforcement. In addition, domestic violence is a primary cause of homelessness for women and their children.

8.      Reforms adopted by federal, state, and local governments over the last thirty years have focused on supporting victims' ability to reach out to law enforcement for assistance and to obtain and maintain secure housing.

9.      The Nuisance Policy tramples on the rights of victims of domestic violence, the majority of whom are women, empowers abusers to act without fear of police intervention, and increases victims' vulnerability to both homelessness and future violence by chilling their right to seek police assistance and banishing them from their homes and the entire city when they seek aid.

10.     As set out below, the actions taken by Defendants against Ms. Watson illustrate the danger of the Maplewood Nuisance Policy. In addition to the repeated domestic violence and physical abuse that she suffered, Ms. Watson lost her home and was barred from living anywhere in Maplewood for six months through the operation of the Nuisance Policy, based on four incidents for which she sought assistance with domestic violence.

11.     Defendants violated Ms. Watson's fundamental constitutional rights. The Maplewood Nuisance Policy and its enforcement infringe on Ms. Watson's right under the First Amendment to freedom of speech and to petition her government and disregard the Fourteenth Amendment's requirements of equal protection, due process, and the right to travel. It also conflicts with and is preempted by the federal Violence Against Women Act, 42 U.S.C. § 14043e-11. Defendants similarly violated the Missouri State Constitution's equivalent protections of freedom of speech and the right to petition, equal protection, due process, and the right to travel.

12.     Ms. Watson brings this action seeking damages for injuries suffered by Defendants' unconstitutional enforcement of the Nuisance Policy and for a declaration that the Nuisance Policy is unconstitutional.

13.     This action is brought pursuant to 42 U.S.C. § 1983.

3

14.     Ms. Watson seeks declaratory relief, as well as compensatory damages, punitive damages, and attorneys' fees as provided under 42 U.S.C. § 1988.

## PARTIES

15.     Ms. Watson is an African-American woman living with disabilities.

16.     From June 2010 to in or about early June 2012, Ms. Watson lived at 2507 Bellevue Avenue, Apt. 9, Maplewood, Missouri (hereinafter "the Property").

17.     Defendant City of Maplewood, Missouri is a political subdivision of the State of Missouri located in the county of St. Louis. The City is governed by a Mayor and a six-member City Council. It acts through its officials, agents, and employees and is responsible for the actions described in this Complaint.

18.     At all times relevant hereto, Defendant Martin Corcoran was the City Manager of Maplewood and, in that position, had final decision-making responsibility for, among other things: enforcing the Nuisance Policy, including designating the Hearing Officer who would oversee the hearings and determining how nuisances would be abated. He is sued in his individual capacity.

19.     At all times relevant hereto, Defendant Stephen Kruse was the Chief of the Maplewood Police Department and, in that position, had final decision-making responsibility for, among other things: overseeing the operations of police officers in their official duties; enforcing the Nuisance Policy, including determining the date by which those found to have committed a nuisance must vacate their homes and removing them if they have not left. He is sued in his individual capacity.

20.     Defendant Anthony Traxler is Assistant City Manager and Director of Public Works for Maplewood and, in that position, has responsibility for, among other things, enforcing the Nuisance Policy, including directing and investigating cases for enforcement, serving as

4

Hearing Officer when so designated by the City Manager, and issuing orders determining whether a nuisance was committed and abatement measures, including revocation of occupancy permits and denials of future permits for periods of six months. He is sued in his individual capacity.

21.    At all times relevant hereto, Defendants Corcoran, Kruse, and Traxler maintained an office in St. Louis County.

22.    Each of the individual defendants is a "person" as defined in 42 U.S.C. § 1983, and at all relevant times acted under the color of state law.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

24.    Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

25.    This Court has personal jurisdiction over Defendants because they are located in the Eastern District of Missouri, and the events that give rise to this action occurred within the Eastern District of Missouri.

26.    Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) in that Defendants are subject to personal jurisdiction within the Eastern District of Missouri and/or the events that give rise to this action occurred within the Eastern District of Missouri.

27.    Divisional venue is proper in the Eastern Division because the events leading to the claim for relief arose in St. Louis County.  E.D. Mo. L.R. 2.07(A)(1), (B)(2).

## FACTS

### A. Maplewood's Nuisance Policy

28.     Defendants adopted, maintain and enforce the Nuisance Policy, which includes Chapter 12, Article II of the Maplewood Code of Ordinances, § 12-25 (the "Occupancy Permit Section") and Chapter 34, Article VIII of the Maplewood Code of Ordinances, §§ 34-240 et seq. ("the Nuisance Section"). As described in further detail below, the combined effect of these code provisions is that residents can be removed from their homes and barred from living anywhere in Maplewood for six months if they are deemed a "nuisance."

29.     Maplewood Code § 12-25 requires every resident of Maplewood to have an occupancy permit or certificate. The Occupancy Permit Section mandates that every permit application provide basic identifying information of each occupant, and that such information may include photographic identification of all adult occupants and a copy of the signed lease. § 12-25(c).

30.     Prospective residents must apply for an occupancy permit regardless of whether the property itself has already passed a separate housing code inspection by the City. Section 12-23(c) of the Maplewood Code provides for such inspections.

31.      The Occupancy Permit Section further provides that the occupancy permit can be revoked for noncompliance with the Maplewood Code. § 12-25(g).

32.     In 2006, the City enacted the Nuisance Section, which authorizes the City to revoke an occupancy permit when a premises or its occupants or owner are designated to be a "nuisance" and to deny a new occupancy permit for up to six months. Maplewood Code § 34-242(e).

33.     Maplewood Code § 34-240 sets out an expansive list of "nuisances." Many of the nuisances are defined overly vaguely, giving broad authority and discretion to the City to decide what conduct to punish. *See, e.g.*, § 34-240(1) ("Any act done or committed, permitted or

6

allowed to be done or committed . . . which is injurious or dangerous to public health"); § 34-240(2) ("Any pursuit followed or act done by any person to the hurt, injury, annoyance inconvenience or damage to the public").

34.     The City also defines nuisances to encompass situations where a resident calls police, is the victim of a crime, or is in need of emergency assistance. For example, nuisances include:  1) "More than two instances within a 180-day period of incidents of peace disturbance or domestic violence resulting in calls to the police," § 34-240(17)(f); 2) "More than two instances within a 180-day period of commission of acts which are prohibited by state statute or city ordinance . . .which have resulted in arrests . . . ," § 34-240(17)(c); and 3) "Commission of acts which are prohibited by federal law or state statute . . . which have resulted in arrests that are classified as felonies occurring two or more times within a period of 90 days . . . ," § 34-240(17)(a).

35.     There is no exemption in the Nuisance Section for situations where a resident is making calls to police seeking protection from domestic violence, or is the victim of acts prohibited by federal, state, or local law.

36.     The Nuisance Section provides the City with different enforcement mechanisms. In cases where an immediate threat to public health, welfare, or safety is apparent, the City Manager may abate the nuisance "without notice, by any suitable means." Maplewood Code § 34-242(1). In other cases, the City Manager or designee holds a hearing, considering the following factors: "1) The magnitude of the harm caused by the alleged detrimental activity or conditions; 2) The length of time that the alleged detrimental activity or conditions have existed; 3) The effect of the activity or conditions at the property on the value of adjacent properties and those in the surrounding area; 4) The number of times that public safety officers have been

7

dispatched to the property; and 5) The extent of efforts by the owner or person having charge of the property to remedy the alleged detrimental activity or conditions." Maplewood Code § 34-242(2)(c). Police response to a property is an explicit factor in determining that a nuisance exists, even if residents needed and requested police assistance.

37.     The Nuisance Section empowers the City to pursue abatement, "by any measures necessary to cause its cessation and the prevention of its recurrence." Maplewood Code § 34-242(2)(e). If the City Manager or designee finds that there is a nuisance, he or she may order the owner or occupant "to abate the nuisance within a prescribed period of time, or abate it by other means." Maplewood Code § 34-242(2)(d).

38.     The only specific means of abatement laid out in the Nuisance Section are revocation of occupancy permits, denial of future occupancy permits for up to six months, and closure of the premises. Maplewood Code § 34-242(2)(e). If these measures are ordered, the City Manager directs the Chief of Police to set a deadline for vacating the property. Maplewood Code § 32-242(2)(h). The Nuisance Section authorizes the Police Chief to remove persons who have not vacated by the deadline, and to secure the premises to prevent unlawful entry. *Id.*

39.     The City is also authorized to file suit against the owner or occupant who violates the Nuisance Section, and to levy taxes for the costs of abatement incurred by the City. Maplewood Code §§ 34-242(4), (2)(f).

**B.      Ms. Watson's Residence in Maplewood and Occupancy Permit**

40.      On June 1, 2010, the City issued an occupancy permit ("Occupancy Permit") to Ms. Watson for the Property. Ms. Watson began renting the Property at that time, until she was forced to leave approximately two years later.

41.       Her rent at the Property was subsidized by a Section 8 voucher issued by the Housing Authority of St. Louis County.

**C.      Domestic Violence Perpetrated Against Ms. Watson**

42.      Ms. Watson was the victim of repeated domestic violence perpetrated by her former boyfriend, Robert Hennings, including violent attacks.

43.      Hennings did not reside at the Property.

44.      From September 2011 to February 2012, officers from the Maplewood Police Department responded to the Property four times related to the domestic violence. The City later enforced its Nuisance Policy against Ms. Watson based on these four police responses.

**September 24, 2011 Incident**

45.      On September 24, 2011, Hennings visited Ms. Watson at the Property, where he began drinking and verbally abusing her. After she asked him to leave, she closed the front door of the Property and latched the chain. Later, Hennings returned to the Property and began knocking on the front door. Ms. Watson, who was in bed asleep at the time, told Hennings that he was not allowed inside. Hennings kicked open the front door and entered Ms. Watson's bedroom. Hennings told Ms. Watson that he was "no longer on papers" and was going to "kick [her] ass." He struck her in her face with a closed fist.

46.     Fearing more physical abuse, Ms. Watson fled the Property and called the police. Police arrived and arrested Hennings for assault in the third degree. They also photographed lacerations on Ms. Watson's lip and the damage to her front door.

**November 8, 2011 Incident**

47.     On November 8, 2011, Ms. Watson again sought police assistance when Hennings shoved her in her home. When police arrived, Hennings admitted he had shoved her. Police arrested Hennings for domestic assault in the third degree.

**January 7, 2012 Incident**

48.     On January 7, 2012, Ms. Watson contacted the police because she became fearful during an argument with Hennings and wanted him to leave her home. When police arrived, Hennings agreed to return to his residence.

**February 22, 2012 Incident**

49.     On February 22, 2012, Ms. Watson returned after a trip and found Hennings at the Property. She wanted him to leave, but he refused. Hennings struck Ms. Watson's breast and began to choke her, and Ms. Watson physically defended herself. She called the police, and Hennings fled the Property.

50.     The police apprehended Hennings away from the Property and arrested him for domestic assault in the third degree. Ms. Watson was issued a summons for domestic assault in the third degree based on injury to Hennings when she defended herself from his attack.

**Incidents of Domestic Violence Following the Enforcement of the Nuisance Policy**

51.     As will be described in further detail below, the City enforced the Nuisance Policy against Ms. Watson based on the incidents of September 24, 2011, November 8, 2011,

January 7, 2012, and February 22, 2012. Hennings, however, continued to perpetrate domestic violence against Ms. Watson.

52.     Based on information and belief, Hennings was arrested on May 28, 2012 for assaulting Ms. Watson at the Property.

53.     Subsequently, Ms. Watson was forced to leave her home because of the City's actions and moved to the city of St. Louis. On July 11, 2012, Hennings kicked in the door to Ms. Watson's new residence and stabbed her in the legs.

54.     Because of her experience in Maplewood, Ms. Watson feared calling the police. She chose to go by herself to the hospital, where she was treated. On information and belief, the hospital contacted the St. Louis Metropolitan Police Department, which arrested Hennings.

55.     Hennings was charged, plead guilty to domestic assault in the third degree in August 2012, and sentenced to incarceration. *See Exhibit B.*

56.     Ms. Watson obtained a full order of protection against Hennings in July 2012. *See Exhibit C.*

57.     On information and belief, Hennings later violated the order of protection by writing and calling Ms. Watson. Ms. Watson contacted law enforcement in St. Louis and Hennings faced additional sanctions.

58.     On information and belief, Hennings died in 2013.

**D.  Defendant's Enforcement of the Nuisance Policy Against Ms. Watson**

59.     In a notice dated March 7, 2012, Defendant Traxler notified Ms. Watson that a hearing pursuant to the City's Nuisance Policy was scheduled for March 22, 2012 concerning police calls placed to the Police Department. *See Exhibit D.*

60.     Defendant Traxler also notified Bellevue Apartments, LLC, which operated Ms. Watson's housing, that a hearing was scheduled, because "[t]here have been several disturbance calls to the Maplewood Police Department involving Ms. Watson." *See Exhibit E.*

61.     On March 7, Defendant Traxler wrote a memo summarizing the prosecution of Ms. Watson under the Nuisance Policy. He stated that Ms. Watson's contacts with police regarding Hennings "appear to fall within the provisions of Chapter 34 Section 17F, 'more than two instances within a one hundred eighty (180) day period of peace disturbance or domestic violence resulting in calls to the police.'" *See Exhibit F.* The memo further describes the September 24, 2011, November 8, 2011, January 7, 2012, and February 22, 2012 incidents as the four incidents that would be presented as evidence against Ms. Watson at the hearing.

62.     The City had knowledge that Ms. Watson was a victim of repeated domestic violence by Hennings, yet chose to proceed based on these four incidents.

63.     Defendant Traxler was designated by Defendant Corcoran, City Manager, to serve as Hearing Officer for the hearing against Ms. Watson, despite Mr. Traxler's inability to act impartially based on his direction and involvement in the prosecution of the City's case against Ms. Watson.  *See Exhibit G.*

64.     Ms. Watson appeared at the hearing without counsel on March 22. Defendant Traxler presided over the hearing as the Hearing Officer, and heard from Maplewood police officers about their responses to Ms. Watson's home.

65.     Following the hearing, Defendant Traxler issued the City's order ("Revocation Order"), dated April 10, 2012. *See Exhibit H.*  Defendant Traxler made findings of fact.

66.     First, he found that "there have been repeated instances at the Property of peace disturbance and/or domestic violence, resulting in numerous calls to the police," and listed four

12

instances involving Ms. Watson and Hennings at the Property. The four incidents—on September 24, 2011, November 8, 2011, January 7, 2012, and February 22, 2012—are each identified as domestic disturbance calls.

67.     Second, he stated that, "As a result of these instances of peace disturbance and domestic violence, Maplewood police officers have been put at risk."

68.     The Revocation Order did not contain any details on how the officers were put at risk, other than because they were responding to calls relating to domestic violence.

69.     Third, he found that, "[g]iven the nature and number of incidents, a high magnitude of harm has been caused."

70.     The Revocation Order did not state what harm it was referring to and whether the harm included the domestic violence experienced by Ms. Watson. However, the City had information, including from the police records, of the harms Ms. Watson suffered.

71.     Based on the conclusion that the Nuisance Policy was violated, Defendant Traxler ordered the revocation of Ms. Watson's occupancy permit for a period of six months, to commence on a date set by the Maplewood Chief of Police. He further provided that Ms. Watson would not be entitled to occupy her home and that she would be denied an occupancy permit anywhere within the City for a period of six months.

72.     He issued a similar order against Hennings.

73.     Defendant Chief of Police Stephen Kruse wrote a letter to Ms. Watson dated April 10, ordering her to leave the Property by 5 p.m. on May 30, 2012. *See Exhibit I*. Ms. Watson was prohibited from applying for another occupancy permit anywhere in the City until after November 30, 2012.

13

74.     The City also notified Bellevue Apartments, LLC of the revocation of Ms. Watson's occupancy permit. *See Exhibit J.*

75.     Due to the Revocation Order, Ms. Watson left the Property and moved to the city of St. Louis in early June 2012, after obtaining permission to extend her stay a few more days.

**E.     Discriminatory Targeting of Domestic Violence Victims**

76.     The Nuisance Policy explicitly discriminates against domestic violence victims by specifically penalizing calls for police service relating to domestic violence.

77.     On information and belief, Defendants have enforced the Nuisance Policy against other women domestic violence victims like Ms. Watson.

78.     Blaming and stereotyping of domestic violence survivors, the majority of whom are women, as responsible for the violence perpetrated against them is a form of discrimination that many women domestic violence survivors experience when seeking police and emergency assistance.

79.     The enactment of the Nuisance Policy and the enforcement of it by the City demonstrate that the Defendants sought to penalize domestic violence victims for seeking police assistance for harms they experienced, to prohibit them from seeking it in the future, and indeed to remove them from the City altogether.

**F.     The Harms to Ms. Watson**

80.     The actions of Defendants, in adopting and enforcing the Nuisance Policy, resulted in significant harms to Ms. Watson, including violation of constitutional rights, loss of her home and long-term housing stability, as well as severe and ongoing emotional suffering and mental anguish.

81.     Ms. Watson was forced to move quickly from Maplewood, suffering economic losses. She was compelled to leave her home and the community in which she enjoyed living.

82.     Following the Revocation Order, Ms. Watson lost her Section 8 voucher from the Housing Authority of St. Louis County because her lease had not been renewed. It was impossible for Ms. Watson to renew her lease given the terms of the Revocation Order.

83.     Without the voucher, she was unable to secure a stable home for herself. She has moved approximately eight times after the Revocation Order and was homeless for periods of time.

84.     Ms. Watson wanted to rent another home in Maplewood, but could not, due to the Revocation Order. To this day, she would like to return to live in Maplewood but fears that the Nuisance Policy could once again be applied against her should she ever need to seek police assistance or be the victim of crime.

85.     In July 2016, the Housing Authority reinstated Ms. Watson's voucher after being notified that its termination violated the Violence Against Women Act and other legal protections. Ms. Watson now lives in St. Louis County with the benefit of the voucher.

86.     As a result of each and every violation of law set out in the individual Counts, Ms. Watson has suffered loss of her rights, loss of her home, and great emotional distress.

87.     Absent declaratory relief, residents of Maplewood face the very real threat of losing their homes and banishment from the City if they contact the police for help. The policies and practices of Defendants have caused and continue to cause a serious threat to the safety and well-being of crime victims in Maplewood, including domestic violence survivors like Ms. Watson.

**COUNT I: Rights of Speech and Petition**

**(U.S. Const. amend. 1)**

88.     Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

89.     The First Amendment to the United States Constitution guarantees the right to freedom of speech and the right to petition the government for redress of grievances.

90.     Under the First Amendment's "right to petition" clause, communications to law enforcement—including (1) reporting physical assault, (2) reporting criminal activity, and (3) filing a complaint with law enforcement—are constitutionally protected activities.

91.     The First Amendment also prohibits restrictions on the expression of information or speech, including prohibitions on reporting crime or requesting police service.

92.     The language of the Nuisance Section violates the First Amendment on its face by imposing penalties, including banishment, on the basis of calls to the police or crime occurring at a property, regardless of whether the tenant was the victim or perpetrator, thereby outright burdening tenants' ability to report crime and seek police assistance.

93.     Defendants' enforcement of the Nuisance Policy against Ms. Watson based on calls made to the police reporting domestic violence perpetrated against her directly violated her right to petition the government to redress grievances and to freedom of speech.

94.     The Nuisance Policy, particularly as applied to victims of crime, such as domestic violence, or those in need of emergency assistance, does not advance any compelling government interest and is not narrowly tailored to justify the infringement of the fundamental right to call the police.

16

95.     Accordingly, the Nuisance Policy violated the First Amendment of the U.S. Constitution.

96.     Therefore, Ms. Watson requests the relief outlined below.

**COUNT II: Equal Protection**

**(U.S. Const. amend. XIV)**

97.     Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

98.     The Fourteenth Amendment to the United States Constitution and its Missouri equivalent prohibit the denial of equal protection of the law.

99.     In enacting the Nuisance Policy, Maplewood intentionally discriminated against women by singling out calls relating to domestic violence.  The vast majority of victims of domestic violence are women.  The Nuisance Section relies on gender stereotypes about abused women, which include blaming victims for the criminal conduct perpetrated against them.

100.    In enforcing the Nuisance Policy against victims of domestic violence like Ms. Watson, Defendants punish and/or ban women victims who seek police assistance. On information and belief, Defendants have enforced the Nuisance Policy against other women victims of domestic violence.

101.    Ms. Watson was injured by the discriminatory enforcement of the Nuisance Policy because she was removed from her home and banned by the City after calling for help with domestic violence.

102.    Enforcement of the Nuisance Section in situations where residents seek emergency or police assistance relating to domestic violence does not advance an important or

legitimate government interest, and is not substantially or rationally related to advance such an interest.

103.    Accordingly, Defendants have violated the right to equal protection under the Fourteenth Amendment of the U.S. Constitution.

104.    Therefore, Ms. Watson requests the relief outlined below.

## COUNT III:  Right to Travel

## (U.S. Const. amend. XIV, art. IV, § 2)

105.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

106.    The United States Constitution protects a fundamental right to travel, which includes the right to establish residence.

107.    The Nuisance Policy does not promote a compelling state interest when it bars people who have committed "nuisances," including contacting police for assistance or being the victim of crime at one's home, from living in the City.

108.    Ms. Watson was forced to give up her residence in the City, and she could not establish residence there by virtue of the Revocation Order for six months.

109.    Accordingly, Defendants violated the federal constitutional right to travel.

110.    Therefore, Ms. Watson requests the relief outlined below.

## COUNT IV:  Due Process

## (U.S. Const. amend. XIV)

111.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

18

112.    The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty or property without due process of law.

113.    Defendants' banishment of Ms. Watson from her home and from the City for six months deprived her of due process, as banishment is not justified by the City's interest and is excessive punishment.

114.    Defendants' enforcement of the Nuisance Policy also deprived Ms. Watson of her property interest in her leasehold by ordering her to vacate her rental home without adequate procedural protections, such as hearing before an impartial decision-maker.

115.    Accordingly, the Nuisance Policy violated the right to due process under the U.S. Constitution.

116.    Therefore, Ms. Watson requests the relief outlined below.

**COUNT V: Preemption by Violence Against Women Act**

**(Violence Against Women Act, 42 U.S.C. § 14043e-11)**

117.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

118.    In 2005, Congress enacted housing protections in the Violence Against Women Act for victims of domestic violence who live in federally subsidized housing, including with Section 8 benefits. The law provides that incidents of actual or threatened domestic violence, dating violence, or stalking shall not be good cause for terminating the assistance, tenancy, or occupancy rights of the victim of such violence. Furthermore, the Violence Against Women Act provides that criminal activity directly relating to domestic violence engaged in by a member of a tenant's household or any guest or other person shall not be cause for termination of assistance,

19

tenancy, or occupancy rights if the tenant is the victim or threatened victim of that domestic violence.

119.    The Nuisance Policy penalized Ms. Watson based on incidents of domestic violence, resulting in her removal from her home and the termination of her tenancy and assistance.

120.    As a Section 8 voucher holder, Ms. Watson was entitled to housing rights pursuant to the Violence Against Women Act but instead was punished by Defendants using the Nuisance Policy, resulting in the loss of her home and voucher.

121.    Accordingly, the Nuisance Policy conflicts with and is preempted by the federal Violence Against Women Act.

122.    Therefore, Ms. Watson requests the relief outlined below.

**COUNT VI: Rights of Speech and Petition**

**(Missouri Const. art. 1, §§ 8, 9)**

123.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

124.    The Missouri Constitution art. 1, §§ 8, 9 guarantees the right to freedom of speech and the right to petition the government for redress of grievances.

125.    Under the Missouri Constitution, communications to law enforcement—including (1) reporting physical assault, (2) reporting criminal activity, and (3) filing a complaint with law enforcement—are constitutionally protected activities.

126.    The Missouri Constitution also prohibits restrictions on the expression of information or speech, including prohibitions on reporting crime or requesting police service.

127.    The language of the Nuisance Section violates the Missouri Constitution on its

20

face by imposing penalties, including banishment, on the basis of calls to the police or crime occurring at a property, regardless of whether the tenant was the victim or perpetrator, thereby outright burdening tenants' ability to report crime and seek police assistance.

128.    Defendants' enforcement of the Nuisance Policy against Ms. Watson based on calls made to the police reporting domestic violence perpetrated against her directly violated her right to petition the government to redress grievances and to freedom of speech.

129.    The Nuisance Policy, particularly as applied to victims of crime, such as domestic violence, or those in need of emergency assistance, does not advance any compelling government interest and is not narrowly tailored to justify the infringement of the fundamental right to call the police.

130.    Accordingly, the Nuisance Policy violated the Missouri Const. art. 1, §§ 8, 9.

131.    Therefore, Ms. Watson requests the relief outlined below.

**COUNT VII: Equal Protection**

**(Missouri Const. art. 1, § 2)**

132.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

133.    The Missouri Constitution art. 1, § 2 provides that the government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; and that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

134.    In enacting the Nuisance Policy, Maplewood intentionally discriminated against women by singling out calls relating to domestic violence.  The vast majority of victims of domestic violence are women.  The Nuisance Section relies on gender stereotypes about abused women, which include blaming women victims for the criminal conduct perpetrated against them.

135.    In enforcing the Nuisance Policy against victims of domestic violence like Ms. Watson, Defendants punish and/or ban women victims who seek police assistance.

136.    On information and belief, Defendants have enforced the Nuisance Policy against other women victims of domestic violence.

137.    Ms. Watson was injured by the discriminatory enforcement of the Nuisance Policy because she was removed from her home and banned by the City after calling for help with domestic violence.

138.    Enforcement of the Nuisance Section in situations where residents seek emergency or police assistance relating to domestic violence or other crimes does not advance an important or legitimate government interest, and is not substantially or rationally related to advance such an interest.

139.    Accordingly, Defendants have violated the right to equal protection under the Missouri Constitution art. 1, § 2.

140.    Therefore, Ms. Watson requests the relief outlined below.

**COUNT VIII:  Right to Travel**

**(Missouri Const. art. 1, §§ 2, 10)**

141.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

142.    The Missouri Constitution protects a fundamental right to travel, which includes the right to establish residence.

143.    The Nuisance Policy does not promote a compelling state interest when it bars people who have committed "nuisances," including contacting police for assistance or being the victim of crime at one's home, from living in the City.

144.    Ms. Watson was forced to give up her residence in the City, and she could not establish residence there by virtue of the Revocation Order for six months.

145.    Accordingly, Defendants violated the state constitutional right to travel.

146.    Therefore, Ms. Watson requests the relief outlined below.

**COUNT IX:  Due Process**

**(Missouri Const. art. 1, §§ 2, 10)**

147.    Ms. Watson incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

148.    The Missouri Constitution provides that no person shall be deprived of life, liberty or property without due process of law.

149.    Defendants' banishment of Ms. Watson from her home and from the City for six months  deprived her of due process, as banishment is not justified by the City's interest and is excessive punishment.

150.    Defendants' enforcement of the Nuisance Policy also deprived Ms. Watson of her property interest in her leasehold by ordering her to vacate her rental home without adequate procedural protections, such as hearing before an impartial decision-maker.

151.    Accordingly, the Nuisance Policy violated the right to due process under Missouri Const. art. 1, §§ 2, 10.

152.    Therefore, Ms. Watson requests the relief outlined below.

WHEREFORE, Ms. Watson prays for judgment on Counts I – IX as follows:

1.      Ms. Watson requests a declaratory judgment against Defendants under (a) Federal Rule of Civil Procedure 57, (b) 28 U.S.C. § 2201(a), and (c) any "further necessary or proper relief" under 28 U.S.C. § 2202;

2.       Ms. Watson requests a declaration that the Nuisance Policy violates the United States Constitution, Missouri Const. art. 1, §§ 2, 8-10, and other legal provisions as set out above;

3.      Ms. Watson requests an award of compensatory damages against all Defendants, and punitive damages against the individual Defendants;

4.      Ms. Watson requests an award of the costs and expenses of this action, including attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

5.      Ms. Watson requests any further relief that the Court determines may be just or equitable.

DATED this 7th day of April, 2017.

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
(816) 470-9938
gwilcox@aclu-mo.org

Sandra S. Park, #4122370NY (*pro hac vice forthcoming*)
Lenora Lapidus, #2414225NY (*pro hac vice forthcoming*)
ACLU Women's Rights Project
125 Broad Street, 18th Fl.
New York, NY 10004
(212) 519-7871
spark@aclu.org
llapidus@aclu.org

*Attorneys for Plaintiff*