UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROSETTA WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CV1268 JCH |
| ) | |
| CITY OF MAPLEWOOD, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Individual Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, filed June 19, 2017. (ECF No. 19). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Defendants in this case are the City of Maplewood ("Maplewood" or "the City"), Maplewood City Manager Martin Corcoran ("Corcoran"), Maplewood Chief of Police Stephen Kruse ("Kruse"), and Maplewood Director of Public Works and Assistant City Manager Anthony Traxler ("Traxler"). (Compl., ¶ 2). Defendants enacted laws including Chapter 12, Article II of the Maplewood Code of Ordinances, § 12-25, which requires every resident to obtain and maintain an occupancy permit from the City, and Chapter 34, Article VIII of the Maplewood Code of Ordinances, §§ 34-240 *et seq.*, which defines nuisances and authorizes officials to revoke a resident's occupancy permit if the nuisance is not abated. (*Id.*, ¶¶ 2, 3). Hereinafter, these two sections collectively will be referred to as the "Nuisance Policy."

---

[1] The Court's background section is taken largely from Plaintiff's Complaint, to which Defendants have not yet filed an answer.

As relevant here, the Nuisance Policy defines "nuisance" as follows:

> In addition to any other act declared to be a nuisance by this Code or other ordinances of the city, nuisances are hereby defined and declared to be as follows:….
>
> (17)   Any premises upon which any of the following acts or conditions have occurred or continue to occur, whether by the owner, occupants or persons frequenting or congregating about the property:
>
>> Commission of acts which are prohibited by federal law or state statute committed within the premises, or on the property thereof, or within the immediate vicinity of the property, and which have resulted in arrests that are classified as felonies occurring two or more times within a period of 90 days which acts affect the safety, convenience and tranquility of persons residing, making use or conducting business within the adjacent area;….
>>
>> More than two instances within a 180-day period of commission of acts which are prohibited by state statute or city ordinance committed within the premises, or on the property thereof, or within the immediate vicinity of the property and which have resulted in arrests which acts affect the safety, convenience and tranquility of persons residing, making use or conducting business within the adjacent area;….
>>
>> More than two instances within a 180-day period of incidents of peace disturbance or domestic violence resulting in calls to [] the police.

(ECF No. 1-1, PP. 9-11).  The Nuisance Policy further provides the following with respect to abatement:

> In all other cases [other than those in which an immediate threat to the public health, welfare or safety is apparent], the city manager or his designee shall hold a hearing [to] determine whether a nuisance exists and whether and how it should be abated.
> (a) At least five days' notice shall be given of such hearing to the owner and occupant of the premises upon which the alleged nuisance exists, or to such person's agent, and to the person causing or maintaining the alleged nuisance if other than the owner or occupant and if such person can be found.  Such notices shall be given in writing and delivered in person to the party's residence or place of business.
> (b) All interested parties may appear at the hearing and testify and present evidence concerning the alleged nuisance.
> (c) In determining whether the activity or conditions constitute a nuisance, the city manager or his designee shall consider the following factors:

   1. The magnitude of the harm caused by the alleged detrimental activity or conditions;
   2. The length of time that the alleged detrimental activity or conditions have existed;
   3. The effect of the activity or conditions at the property on the value of adjacent properties and those in the surrounding area;
   4. The number of times that public safety officers have been dispatched to the property; and
   5. The extent of efforts by the owner or person having charge of the property to remedy the alleged detrimental activity or conditions.
 (d) If, after the hearing, it is found that a nuisance exists and that it must be abated, the city manager or his designee may order the owner or occupant of the premises on which the nuisance exists or the person other than the owner or occupant who caused or maintains the nuisance, to abate the nuisance within a prescribed period of time, or abate it by other means.
 (e) The city manager or his designee shall effect the abatement of the nuisance by any measures necessary to cause its cessation and the prevention of its recurrence, including the ordering of revocation of occupancy permits for the persons residing at the dwelling or place of business where the nuisance has occurred and the denial of occupancy permits within the city to those persons for a period not to exceed six months, or the closure of the premise where the nuisance has occurred for a period not to exceed six months.

(*Id.*, P. 12).

From June, 2010, until approximately June, 2012, Plaintiff Rosetta Watson ("Watson") lived at 2507 Bellevue Avenue, Apt. 9, Maplewood, Missouri (hereinafter "the Property"). (Compl., ¶ 16). Watson's rent at the Property was subsidized by a Section 8 voucher issued by the Housing Authority of St. Louis County. (*Id.*, ¶ 41).

During the relevant time period, Watson was the victim of repeated domestic violence attacks perpetrated by her former boyfriend, Robert Hennings ("Hennings"). (Compl., ¶ 42). Watson describes the incidents as follows:

> 45. On September 24, 2011, Hennings visited Ms. Watson at the Property, where he began drinking and verbally abusing her. After she asked him to leave, she closed the front door of the Property and latched the chain. Later, Hennings returned to the Property and began knocking on the front door. Ms. Watson, who was in bed asleep at the time, told Hennings that he was not allowed inside. Hennings kicked open the front door and entered Ms. Watson's bedroom. Hennings told Ms. Watson that he was "no longer on papers" and was going to

"kick [her] ass."  He struck her in her face with a closed fist.

46.     Fearing more physical abuse, Ms. Watson fled the Property and called the police.  Police arrived and arrested Hennings for assault in the third degree.  They also photographed lacerations on Ms. Watson's lip and the damage to her front door.

47.     On November 8, 2011, Ms. Watson again sought police assistance when Hennings shoved her in her home.  When police arrived, Hennings admitted he had shoved her.  Police arrested Hennings for domestic assault in the third degree.

48.     On January 7, 2012, Ms. Watson contacted the police because she became fearful during an argument with Hennings and wanted him to leave her home. When police arrived, Hennings agreed to return to his residence.

49.     On February 22, 2012, Ms. Watson returned after a trip and found Hennings at the Property.  She wanted him to leave, but he refused.  Hennings struck Ms. Watson's breast and began to choke her, and Ms. Watson physically defended herself.  She called the police, and Hennings fled the Property.

50.     The police apprehended Hennings away from the Property and arrested him for domestic assault in the third degree.  Ms. Watson was issued a summons for domestic assault in the third degree based on injury to Hennings when she defended herself from his attack.

(*Id.*, ¶¶ 45-50).[2]

In a letter dated March 7, 2012, Traxler notified Watson that a hearing pursuant to the City's Nuisance Policy was scheduled for March 22, 2012.  (Compl., ¶ 59, citing ECF No. 1-4).[3] Traxler stated the purpose of the hearing was "to determine whether the situation constitutes a nuisance and, if so, how the nuisance should be abated."  (ECF No. 1-4).  Watson's presence was requested at the hearing, and she was informed of her rights to hire an attorney and/or to present

---

[2] The City enforced its Nuisance Policy against Watson based on the above described incidents. According to Watson, however, Hennings continued to perpetrate acts of domestic violence against her after February, 2012, and eventually was sentenced to incarceration.  (Compl., ¶¶ 51-57).  Hennings died in 2013.  (*Id.*, ¶ 58).

[3] The letter asserted that according to the occupancy permit, both Watson and Hennings were the tenants at the Property.  (*See* ECF No. 1-4).

evidence on her own behalf. (*Id.*).[4]

That same day, Traxler sent a letter to Mr. Craig Biesterfeld of Husch Blackwell Sanders LLP, requesting his assistance in the preparation and presentation of the City's case during the hearing. (ECF No. 1-6). The letter listed the September 24, 2011, November 8, 2011, January 7, 2012, and February 22, 2012, incidents as ones to be presented in testimony. (*Id.*). It further stated that Watson's contacts with police regarding Hennings "appear to fall within the provisions of Chapter 34 Section 17F, 'more than two instances within a one hundred eighty (180) day period of peace disturbance or domestic violence resulting in calls to the police.'" (*Id.*).

On March 22, 2012, Corcoran authorized Traxler to serve as the hearing officer for the hearing against Watson. (ECF No. 1-7).[5] Watson appeared at the hearing, without counsel. (Compl., ¶ 64). On April 10, 2012, Traxler issued the City's Findings of Fact, Conclusion of Law, and Order regarding Property Located at 2507 Bellevue Avenue, Apt. 9, Maplewood, Missouri. (ECF No. 1-8). Traxler found that "[a]s established by the testimony of City of Maplewood police officers, there have been repeated instances at the Property of peace disturbance and/or domestic violence resulting in numerous calls to the police." (*Id.*, P. 2). He continued to find that "[a]s a result of these instances of peace disturbance and domestic violence, Maplewood police officers have been put at risk," and "[g]iven the nature and number of incidents, a high magnitude of harm has been caused." (*Id.*, P. 3). Based on these findings, Traxler concluded that "[m]ore than two instances within a 180-day period of incidents of peace disturbance or domestic violence resulting in calls to the police have occurred at the Property,"

---

[4] Traxler also notified Mr. James Eichenlaub of Bellevue Apartments, LLC, the operator of Watson's housing, of the scheduling of the hearing. (Compl., ¶ 60; ECF No. 1-5).
[5] Watson maintains Traxler was unable to act impartially, based on his direction of and involvement in the prosecution of the City's case against Watson. (Compl., ¶ 63).

and "[s]uch incidents constitute a public nuisance." (*Id.*). Traxler thus ordered as follows:

> Pursuant to Chapter 34 Article VIII of the Maplewood Code of Ordinances and the predecessor codified sections thereof, Anthony Traxler, Hearing Officer, hereby orders as follows:
>
> 1. The occupancy permit issued to Rosetta R. Watson for 2507 Bellevue, Apartment #9, is hereby revoked for a period of six (6) months commencing on the date set by the Maplewood Chief of Police, and Rosetta R. Watson shall not be entitled to occupy such property and shall be denied an occupancy permit within the City of Maplewood for a period of six (6) months commencing on the date set by the Maplewood Chief of Police.

(*Id.*).[6]

In a letter dated April 10, 2012, Kruse advised Watson that she must vacate the premises at 2507 Bellevue Avenue # 9 by 5:00 p.m. on May 30, 2012. (ECF No. 1-9). After obtaining permission to extend her stay in Maplewood for a few days, Watson left the Property and moved to the City of St. Louis in early June, 2012. (Compl., ¶ 75). Watson maintains that in addition to being forced to leave her home and the community in which she enjoyed living, she lost her Section 8 voucher from the Housing Authority of St. Louis County because her lease was not renewed. (*Id.*, ¶¶ 81, 82).[7]

Watson filed the instant Complaint on April 7, 2017, claiming Defendants' actions in enacting and enforcing the Nuisance Policy infringed on her fundamental constitutional rights. Specifically, Watson alleges violations of the following: Rights of Speech and Petition (U.S. Const. amend. 1) (Count I); Equal Protection (U.S. Const. amend. XIV) (Count II); Right to Travel (U.S. Const. amend. XIV, art. IV, § 2) (Count III); and Due Process (U.S. Const. amend.

---

[6] Traxler issued a similar order against Hennings. (ECF No. 1-8, P. 3).

[7] The Housing Authority eventually reinstated Watson's voucher in July, 2016, after being notified that its termination violated the Violence Against Women Act and other legal protections. (Compl., ¶ 85). Watson alleges that during her time without the voucher, however, she was forced to move approximately eight times, and further suffered periods of homelessness. (*Id.*, ¶ 83).

XIV) (Count IV).  (Compl., ¶¶ 88-116).[8]  Watson further claims preemption by the Violence Against Women Act, 42 U.S.C. § 14043e-11 (Count V).  (*Id.*, ¶¶ 117-122).  As relief, Watson seeks a declaration that the Nuisance Policy violates the United States and Missouri Constitutions and other legal provisions; an award of compensatory damages against all Defendants, and punitive damages against the individual Defendants; and an award of the costs and expenses of this action, including attorneys' fees.  (*Id.*, P. 24).

As noted above, Individual Defendants filed the instant Motion to Dismiss on June 19, 2017, asserting first that they are entitled to absolute immunity, as their actions all were taken as part of judicial or quasi-judicial proceedings.  Alternatively, Individual Defendants maintain they are entitled to qualified immunity, as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  (ECF No. 19).  Because it is dispositive, the Court addresses only the issue of absolute immunity.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff.  *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).  The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

---

[8] In Counts VI-IX, Watson alleges violations of the corresponding provisions of the Missouri Constitution.  (Compl., ¶¶ 123-152).

Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

"There are two types of immunity from personal liability for damages available to government officials: absolute immunity and qualified immunity." *Brown v. Griesenauer*, 970 F.2d 431, 435 (8th Cir. 1992) (citing *Owen v. City of Independence*, 445 U.S. 622, 637-38, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673 (1980)).[9] "Judges are entitled to absolute immunity for actions taken in their judicial capacity", as are "[p]rosecutors and other non-judicial officials whose acts are an integral part of the judicial process [for acts performed in that capacity]", and legislators for actions taken in their legislative capacity. *Id.* "In general, however, most government officials, even very senior government officials who possess considerable responsibility and discretion, are entitled only to qualified immunity." *Id.* at 436.[10]

### A. Traxler

"The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 113 S.Ct. 2167, 2169, 124 L.Ed.2d 391 (1993). Courts do not analyze immunity only in terms of the

---

[9] "As recognized at common law, public officials require this protection [of immunity] to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

[10] "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown*, 970 F.2d at 436 (internal quotations and citations omitted).

identity or status of the official or class of officials, however. *Brown*, 970 F.2d at 436.  Rather, "[w]hether a government official is entitled to absolute…immunity depends upon the official's function in a particular context or proceeding." *Id.* (citations omitted).  Thus, "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functional[ly] comparab[le] to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Antoine*, 508 U.S. at 436, 113 S.Ct. at 2171 (internal quotations and citations omitted).

Further, absolute privilege may attach "to relevant statements made during administrative proceedings which are 'quasi-judicial' in nature." *Mock v. Chicago, R.I. & P.R. Co.*, 454 F.2d 131, 133 (8th Cir. 1972) (citations omitted).[11]  "Although widely diverse administrative proceedings have been characterized as 'quasi-judicial,' and several methods have been utilized to determine whether a particular proceeding was 'quasi-judicial' in nature, the term is most generally applied where the function of the administrative body under consideration involves the exercise of discretion in the application of legal principles to varying factual situations and requires notice and hearing." *Id.* at 134 (citations omitted).  *See also Rockwood Bank v. Gaia*, 170 F.3d 833, 838 (8th Cir.), *cert. denied*, 528 U.S. 968 (1999) (same); *Faltermeier v. FCA US LLC*, Case No. 4:15CV491 DGK, 2016 WL 4771100, at *5 (W.D. Mo. Sept. 13, 2016) (citing with approval *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 496 (Mo. 1984) (noting the actions of public administrative officers or bodies, who are required to investigate facts, hold hearings, and exercise discretion of a judicial nature, are considered to be quasi-judicial")).

---

[11] "Actions delegated by a municipality to a board or retained for itself to enforce an ordinance are administrative in nature." *Lewis v. City of University City*, 145 S.W.3d 25, 29 (Mo. App. 2004) (citation omitted).  Further, "[a] municipality's decisions made in the course of enforcing an ordinance are reviewable under the Missouri Administrative Procedures Act, Chapter 536 RSMo." *Id.* (citation omitted).

Upon consideration, the Court finds Traxler's actions in conducting the hearing were essentially judicial or adjudicatory. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Brown*, 970 F.2d at 437 (internal quotations and citation omitted). Here, Traxler was required to perform an adjudicatory function in presiding over a hearing designed to determine whether the situation at Watson's home constituted a nuisance pursuant to the City's Nuisance Policy, and if so, how the nuisance should be abated. He then issued the City's Findings of Fact, Conclusion of Law, and Order, concluding that the incidents of peace disturbance or domestic violence resulting in calls to the police occurring at the Property constituted a public nuisance, and ordering that Watson's occupancy permit be revoked for a period of six months. *See Brown*, 970 F.2d at 437 ("In other words, the board of alderman, sitting as a board of impeachment, functioned like judges in that they were required to determine whether bias existed, to hear testimony and receive evidence, to evaluate the credibility of witnesses and weigh the evidence, and to make findings of fact and conclusions of law.").

Under Eighth Circuit law, the foregoing conclusion does not end the Court's immunity analysis. *Brown*, 970 F.2d at 437. Rather, the Court must continue to consider whether Traxler's function in sitting as the hearing officer "was a 'classic' adjudicatory one so as to justify the protection of absolute immunity as opposed to only qualified immunity." *Id.*

> [I]n *Butz* the Court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985) (citing *Butz*

*v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)).

The Supreme Court has acknowledged that "the line between absolute immunity and qualified immunity often is not an easy one to perceive and structure." *Cleavinger*, 474 U.S. at 206, 106 S.Ct. at 503. "For example, federal hearing examiners and parole board members are protected by absolute immunity, but prison disciplinary committee members and school board members are protected by only qualified immunity, even though they arguably perform comparable 'adjudicatory' functions, albeit in different contexts." *Brown*, 970 F.2d at 438 (comparing *Butz*, 438 U.S. at 513, 98 S.Ct. at 2914, and *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), *with Cleavinger*, 474 U.S. at 203, 106 S.Ct. at 501, and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).

Having considered the *Cleavinger-Butz* factors, the Court concludes that on balance Traxler, as hearing officer, falls on the absolute immunity side of the line for his actions taken in that capacity. *Brown*, 970 F.2d at 438. First, the Court finds the need to assure that Traxler is able to perform his functions without harassment or intimidation is strong. Nuisance abatement proceedings by their nature may be contentious, especially in light of the potential consequences of a negative outcome, and "it is in the public interest that [hearing officers] feel free to exercise their judgment in [such] proceedings without fear of burdensome litigation and potentially ruinous personal liability for damages." *Id.*

With respect to "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct", *see Cleavinger*, 474 U.S. at 202, the Court notes that nuisance abatement proceedings in Maplewood are subject to extensive procedural safeguards, as set forth in both the Maplewood ordinances and the Missouri Administrative Procedure Act, Mo. Rev. Stat. § 536.010 *et seq.* ("MAPA"). Under Missouri

law, Maplewood's hearings on nuisances are conducted as "contested cases" under MAPA, as notice and a hearing are required.[12] (*See* Maplewood Code of Ordinances, Article VIII, §§ 34.242(2) ("In all other cases [other than those in which an immediate threat to the public health, welfare or safety is apparent], the city manager or his designee shall hold a hearing [to] determine whether a nuisance exists and whether and how it should be abated."), 34.242(2)(a) ("At least five days' notice shall be given of such hearing to the owner and occupant of the premises upon which the alleged nuisance exists, or to such person's agent, and to the person causing or maintaining the alleged nuisance if other than the owner or occupant and if such person can be found. Such notices shall be given in writing and delivered in person to the party's residence or place of business.")). All persons affected by the proceeding are entitled to attend the hearing, review the evidence presented, be represented by counsel[13], present testimony and/or other evidence, and cross-examine witnesses.[14] (*See* Maplewood Code of Ordinances, Article VIII, § 34.242(2)(b) ("All interested parties may appear at the hearing and testify and present evidence concerning the alleged nuisance."); Compl., Exh. D (letter from the City of Maplewood to Watson, informing her of her rights to appear at the hearing, to hire an attorney to represent her, and to present evidence concerning the alleged nuisance); Mo. Rev. Stat. § 536.070). Furthermore, Watson does not dispute Defendants' contention that witnesses at the proceeding testified under oath, on the record. (*See* Mo. Rev. Stat. § 536.070).

At the conclusion of the nuisance hearing, the hearing officer is required to review the

---

[12] "The key to the classification of a case as contested or noncontested is the requirement of a hearing." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 507 (Mo. banc 2009) (citation omitted).

[13] The fact that Watson did not have counsel present does not negate the fact that she was notified of her right to do so.

[14] Watson's claim that the procedural safeguard of cross-examination "seemingly" was absent is insufficient to overcome Defendants' assertion (and the presumption) that they permitted such pursuant to both the Maplewood Code of Ordinances and the law.

evidence presented and make an independent determination as to whether the activity or conditions constitute a nuisance and if so, the appropriate means of abating said nuisance.[15] (*See* Maplewood Code of Ordinances, Article VIII, § 34.242(2)).  In making the determination, the hearing officer is instructed to consider the magnitude of harm caused by the alleged detrimental activity or conditions, the length of time that the alleged detrimental activities or conditions have existed, the effect of the activities or conditions at the property on the value of adjacent properties and those in the surrounding area, the number of times that public safety officers have been dispatched to the property, and the extent of efforts by the owner or person having charge of the property to remedy the alleged detrimental activity or conditions. (*See Id.*).  Finally, in accordance with MAPA, the hearing officer issues a written Findings of Fact, Conclusions of Law, and Order, (*See* Mo. Rev. Stat. § 536.090; Compl., Exh. H), and any person aggrieved by such Order has the right to appeal the decision to the St. Louis County Circuit Court. (*See* Mo. Rev. Stat. § 536.100; Maplewood Code of Ordinances, Article VIII, § 34.242(2)(g)).  With these protections in place, the Court finds the municipal proceeding at issue "more closely resemble[d] the federal administrative hearings at issue in *Butz* than the prison disciplinary committee hearings at issue in *Cleavinger*." *Brown*, 970 F.2d at 438.[16]

---

[15] Watson complains that Traxler was unable to act impartially, as he served as both prosecutor and judge.  Upon review of the record, however, the Court finds that other than forwarding the letter to Mr. Biesterfeld, requesting his assistance in the preparation and presentation of the City's case during the hearing, there is no evidence that Traxler either conducted an investigation into the charges against Watson, or prepared and presented evidence at the hearing.

[16] The Court finds the cases cited by Watson are distinguishable, as the proceedings at issue did not offer the same level of procedural safeguards as Maplewood's hearing.  For example, in *Cleavinger*, the accused was not entitled to outside counsel; instead, he received only a member of the prison staff to represent him.  *See Cleavinger*, 474 U.S. at 195, 106 S.Ct. at 497.  In *Krueger v. Lyng*, the respondent was not allowed to call witnesses of his own, or to cross-examine those against him.  *Krueger v. Lyng,* 4 F.3d 653, 656 (8th Cir. 1993).  Finally, in *Howard v. Suskie*, no quasi-judicial hearing took place after notice to the accused; instead, the

The Court's consideration of the remaining factors does not change its determination. For example, with respect to insulation from political influence, under Eighth Circuit law such factor has never been held to be determinative, even when the official at issue was appointed by and served at the pleasure of the governor. *See Buser v. Raymond*, 476 F.3d 565, 571 (8th Cir. 2007). Regarding the importance of precedent, "because no evidence exists in the record as to whether the [hearing officer] relies on precedent in rendering his decision, this factor neither weighs in favor nor against granting absolute immunity." *Id.* Finally, as noted above the nuisance proceeding was adversary in nature, and any erroneous decision by the hearing officer was correctable on appeal. *Id.*

Thus, because a majority, if not all of the absolute immunity factors weigh in favor of granting Traxler absolute immunity, the Court will grant his Motion to Dismiss.

**B. Corcoran**

As noted above, at all relevant times Corcoran was the Maplewood City Manager. Watson's only substantive allegation with respect to Corcoran is that on March 22, 2012, he authorized Traxler to serve as the hearing officer for the hearing against Watson. In *Krueger v. Lyng*, the Eighth Circuit held that a defendant engaging in similar activities was entitled to absolute immunity. *See Id.*, 4 F.3d at 657. Corcoran's Motion to Dismiss will therefore be granted.

**C. Kruse**

As noted above, at all relevant times Kruse was the Maplewood Chief of Police. According to Watson, his sole involvement in this matter came in the form of a letter he sent Watson on April 10, 2012, advising her that she must vacate the premises at 2507 Bellevue

---

sanction was imposed immediately upon issuance, and by the manager of a HUD office (*i.e.*, an executive), rather than a judge. *Howard v. Suskie*, 26 F.3d 84, 86 (8th Cir. 1994).

Avenue # 9 by 5:00 p.m. on May 30, 2012. In his letter, Kruse states that his advice regarding Watson's required vacation of the premises was issued pursuant to Traxler's April 10, 2012, Order. (*See* ECF No. 1-9). Under Eighth Circuit law, "[a] judge's absolute immunity extends to public officials for acts they are specifically required to do under court order or at a judge's direction." *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (internal quotations and citations omitted). Further, "[a] quasi-judicial form of immunity is extended to police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court." *Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974) (per curiam) (citation omitted), *cert. denied*, 424 U.S. 975 (1976). "A police officer charged with service of a facially valid court order is entitled to carry out that order without exposure to a suit for damages." *Penn v. U.S.*, 335 F.3d 786, 789 (8th Cir. 2003) (citation omitted), *cert. denied*, 541 U.S. 987 (2004).[17]

In the instant case, the Court finds that Kruse is entitled to absolute immunity for his action in sending the letter to Watson. In other words, although he was not acting pursuant to a court order per se, his action pursuant to an order issuing from a quasi-judicial proceeding commands absolute immunity as well. Kruse's Motion to Dismiss will therefore be granted.

---

[17] Police officers are entitled to absolute immunity even if the facially valid court order later is held to be unlawful, *see Penn*, 335 F.3d at 789, and an order is facially invalid "only if it was issued in the clear absence of all jurisdiction." *Id.* (internal quotations and citation omitted). Such was not the case with Traxler's Order.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Individual Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 19) is **GRANTED**, and Traxler, Corcoran and Kruse are **DISMISSED** as Defendants in this action.

Dated this    1st    Day of November, 2017.

    \s\  Jean C. Hamilton
    UNITED STATES DISTRICT JUDGE