UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROSETTA WATSON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 4:17CV1268 JCH |
| CITY OF MAPLEWOOD, MISSOURI, et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on the City of Maplewood Missouri's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, filed December 15, 2017. (ECF No. 57). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Defendants in this case are the City of Maplewood ("Maplewood" or "the City"), Maplewood City Manager Martin Corcoran ("Corcoran"), Maplewood Chief of Police Stephen Kruse ("Kruse"), and Maplewood Director of Public Works and Assistant City Manager Anthony Traxler ("Traxler"). (First Amended Compl., ¶ 2). Defendants enacted laws including Chapter 12, Article II of the Maplewood Code of Ordinances, § 12-25, which requires every resident to obtain and maintain an occupancy permit from the City, and Chapter 34, Article VIII of the Maplewood Code of Ordinances, §§ 34-240 *et seq.*, which defines nuisances and authorizes officials to revoke a resident's occupancy permit if the nuisance is not abated. (*Id.*, ¶¶ 2, 3). Hereinafter, these two sections collectively will be referred to as the "Nuisance Policy."

---

[1] The Court's background section is taken largely from Plaintiff's First Amended Complaint, to which Maplewood has not yet filed an answer.

As relevant here, the Nuisance Policy defines "nuisance" as follows:

> In addition to any other act declared to be a nuisance by this Code or other ordinances of the city, nuisances are hereby defined and declared to be as follows:….
>
> (17) Any premises upon which any of the following acts or conditions have occurred or continue to occur, whether by the owner, occupants or persons frequenting or congregating about the property:
>
> > Commission of acts which are prohibited by federal law or state statute committed within the premises, or on the property thereof, or within the immediate vicinity of the property, and which have resulted in arrests that are classified as felonies occurring two or more times within a period of 90 days which acts affect the safety, convenience and tranquility of persons residing, making use or conducting business within the adjacent area;….
> >
> > More than two instances within a 180-day period of commission of acts which are prohibited by state statute or city ordinance committed within the premises, or on the property thereof, or within the immediate vicinity of the property and which have resulted in arrests which acts affect the safety, convenience and tranquility of persons residing, making use or conducting business within the adjacent area;….
> >
> > More than two instances within a 180-day period of incidents of peace disturbance or domestic violence resulting in calls to [] the police.

(ECF No. 54-2, PP. 9-11). The Nuisance Policy further provides the following with respect to abatement:

> In all other cases [other than those in which an immediate threat to the public health, welfare or safety is apparent], the city manager or his designee shall hold a hearing [to] determine whether a nuisance exists and whether and how it should be abated.
> (a) At least five days' notice shall be given of such hearing to the owner and occupant of the premises upon which the alleged nuisance exists, or to such person's agent, and to the person causing or maintaining the alleged nuisance if other than the owner or occupant and if such person can be found. Such notices shall be given in writing and delivered in person to the party's residence or place of business.
> (b) All interested parties may appear at the hearing and testify and present evidence concerning the alleged nuisance.
> (c) In determining whether the activity or conditions constitute a nuisance, the city manager or his designee shall consider the following factors:

1. The magnitude of the harm caused by the alleged detrimental activity or conditions;
2. The length of time that the alleged detrimental activity or conditions have existed;
3. The effect of the activity or conditions at the property on the value of adjacent properties and those in the surrounding area;
4. The number of times that public safety officers have been dispatched to the property; and
5. The extent of efforts by the owner or person having charge of the property to remedy the alleged detrimental activity or conditions.

(d) If, after the hearing, it is found that a nuisance exists and that it must be abated, the city manager or his designee may order the owner or occupant of the premises on which the nuisance exists or the person other than the owner or occupant who caused or maintains the nuisance, to abate the nuisance within a prescribed period of time, or abate it by other means.

(e) The city manager or his designee shall effect the abatement of the nuisance by any measures necessary to cause its cessation and the prevention of its recurrence, including the ordering of revocation of occupancy permits for the persons residing at the dwelling or place of business where the nuisance has occurred and the denial of occupancy permits within the city to those persons for a period not to exceed six months, or the closure of the premise where the nuisance has occurred for a period not to exceed six months.

(*Id.*, P. 12).

From June, 2010, until approximately June, 2012, Plaintiff Rosetta Watson ("Watson") lived at 2507 Bellevue Avenue, Apt. 9, Maplewood, Missouri (hereinafter "the Property"). (First Amended Compl., ¶ 16). Watson's rent at the Property was subsidized by a Section 8 voucher issued by the Housing Authority of St. Louis County. (*Id.*, ¶ 41).

During the relevant time period, Watson was the victim of repeated domestic violence attacks perpetrated by her former boyfriend, Robert Hennings ("Hennings"). (First Amended Compl., ¶ 42). Watson describes the incidents as follows:

> 45. On September 24, 2011, Hennings visited Ms. Watson at the Property, where he began drinking and verbally abusing her. After she asked him to leave, she closed the front door of the Property and latched the chain. Later, Hennings returned to the Property and began knocking on the front door. Ms. Watson, who was in bed asleep at the time, told Hennings that he was not allowed inside. Hennings kicked open the front door and entered Ms. Watson's bedroom. Hennings told Ms. Watson that he was "no longer on papers" and was going to

"kick [her] ass." He struck her in her face with a closed fist.

46. Fearing more physical abuse, Ms. Watson fled the Property and called the police. Police arrived and arrested Hennings for assault in the third degree. They also photographed lacerations on Ms. Watson's lip and the damage to her front door.

47. On November 8, 2011, Ms. Watson again sought police assistance when Hennings shoved her in her home. When police arrived, Hennings admitted he had shoved her. Police arrested Hennings for domestic assault in the third degree.

48. On January 7, 2012, Ms. Watson contacted the police because she became fearful during an argument with Hennings and wanted him to leave her home. When police arrived, Hennings agreed to return to his residence.

49. On February 22, 2012, Ms. Watson returned after a trip and found Hennings at the Property. She wanted him to leave, but he refused. Hennings struck Ms. Watson's breast and began to choke her, and Ms. Watson physically defended herself. She called the police, and Hennings fled the Property.

50. The police apprehended Hennings away from the Property and arrested him for domestic assault in the third degree. Ms. Watson was issued a summons for domestic assault in the third degree based on injury to Hennings when she defended herself from his attack.

(*Id.*, ¶¶ 45-50).[2]

In a letter dated March 7, 2012, Traxler notified Watson that a hearing pursuant to the City's Nuisance Policy was scheduled for March 22, 2012. (First Amended Compl., ¶ 59, citing ECF No. 54-5).[3] Traxler stated the purpose of the hearing was "to determine whether the situation constitutes a nuisance and, if so, how the nuisance should be abated." (ECF No. 54-5). Watson's presence was requested at the hearing, and she was informed of her right to hire an

---

[2] The City enforced its Nuisance Policy against Watson based on the above described incidents. According to Watson, however, Hennings continued to perpetrate acts of domestic violence against her after February, 2012, and eventually was sentenced to incarceration. (First Amended Compl., ¶¶ 51-57). Hennings died in 2013. (*Id.*, ¶ 58).

[3] The letter asserted that according to the occupancy permit, both Watson and Hennings were the tenants at the Property. (*See* ECF No. 54-5).

attorney and/or to present evidence on her own behalf. (*Id.*).[4]

That same day, Traxler sent a letter to Mr. Craig Biesterfeld of Husch Blackwell Sanders LLP, requesting his assistance in the preparation and presentation of the City's case during the hearing. (ECF No. 54-7). The letter listed the September 24, 2011, November 8, 2011, January 7, 2012, and February 22, 2012, incidents as ones to be presented in testimony. (*Id.*). It further stated that Watson's contacts with police regarding Hennings "appear to fall within the provisions of Chapter 34 Section 17F, 'more than two instances within a one hundred eighty (180) day period of peace disturbance or domestic violence resulting in calls to the police.'" (*Id.*).

On March 22, 2012, Corcoran authorized Traxler to serve as the Hearing Officer for the hearing against Watson. (ECF No. 54-8).[5] Watson appeared at the hearing, without counsel. (First Amended Compl., ¶ 64). On April 10, 2012, Traxler issued the City's Findings of Fact, Conclusion of Law, and Order regarding Property Located at 2507 Bellevue Avenue, Apt. 9, Maplewood, Missouri. (ECF No. 54-9). Traxler found that "[a]s established by the testimony of City of Maplewood police officers, there have been repeated instances at the Property of peace disturbance and/or domestic violence resulting in numerous calls to the police." (*Id.*, P. 2). He continued to find that "[a]s a result of these instances of peace disturbance and domestic violence, Maplewood police officers have been put at risk," and "[g]iven the nature and number of incidents, a high magnitude of harm has been caused." (*Id.*, P. 3). Based on these findings, Traxler concluded that "[m]ore than two instances within a 180-day period of incidents of peace

---

[4] Traxler also notified Mr. James Eichenlaub of Bellevue Apartments, LLC, the operator of Watson's housing, of the scheduling of the hearing. (First Amended Compl., ¶ 60; ECF No. 54-6).
[5] Watson maintains Traxler was unable to act impartially, based on his direction of and involvement in the prosecution of the City's case against Watson. (First Amended Compl., ¶ 63).

disturbance or domestic violence resulting in calls to the police have occurred at the Property," and "[s]uch incidents constitute a public nuisance." (*Id.*). Traxler thus ordered as follows:

> Pursuant to Chapter 34 Article VIII of the Maplewood Code of Ordinances and the predecessor codified sections thereof, Anthony Traxler, Hearing Officer, hereby orders as follows:
>
> 1. The occupancy permit issued to Rosetta R. Watson for 2507 Bellevue, Apartment #9, is hereby revoked for a period of six (6) months commencing on the date set by the Maplewood Chief of Police, and Rosetta R. Watson shall not be entitled to occupy such property and shall be denied an occupancy permit within the City of Maplewood for a period of six (6) months commencing on the date set by the Maplewood Chief of Police.

(*Id.*).[6]

In a letter dated April 10, 2012, Kruse advised Watson that she must vacate the premises at 2507 Bellevue Avenue # 9 by 5:00 p.m. on May 30, 2012. (ECF No. 54-10). After obtaining permission to extend her stay in Maplewood for a few days, Watson left the Property and moved to the City of St. Louis in early June, 2012. (First Amended Compl., ¶ 75). Watson maintains that in addition to being forced to leave her home and the community in which she enjoyed living, she lost her Section 8 voucher from the Housing Authority of St. Louis County because her lease was not renewed. (*Id.*, ¶¶ 81, 82).[7]

Watson filed her original Complaint in this matter on April 7, 2017, claiming Defendants' actions in enacting and enforcing the Nuisance Policy infringed on her fundamental

---

[6] Traxler issued a similar order against Hennings. (ECF No. 54-9, P. 3).
[7] The Housing Authority eventually reinstated Watson's voucher in July, 2016, after being notified that its termination violated the Violence Against Women Act and other legal protections. (First Amended Compl., ¶ 85). Watson alleges that during her time without the voucher, however, she was forced to move approximately eight times, and further suffered periods of homelessness. (*Id.*, ¶ 83).

constitutional rights.[8] In her First Amended Complaint, filed November 17, 2017, Watson alleges violations of the following: Rights of Speech and Petition (U.S. Const. amend. 1) (Count I); Equal Protection (U.S. Const. amend. XIV) (Count II); Right to Travel (U.S. Const. amend. XIV, art. IV, § 2) (Count III); and Due Process (U.S. Const. amend. XIV) (Count IV). (First Amended Compl., ¶¶ 88-116).[9] As relief, Watson seeks a declaration that the Nuisance Policy violates the United States and Missouri Constitutions and other legal provisions; an award of compensatory damages against all Defendants, and punitive damages against the individual Defendants; and an award of the costs and expenses of this action, including attorneys' fees. (*Id.*, P. 23).

As noted above, Defendant City of Maplewood filed the instant Motion to Dismiss on December 15, 2017, asserting Watson's claims must be dismissed for failure to state a claim for which relief may be granted. (ECF No. 57). Upon consideration of the parties' submissions, the Court declines to revisit its previous rulings.[10] The Court will consider only Maplewood's assertions that Plaintiff's amended right to travel claim fails, and that Plaintiff's entire Complaint against it must be dismissed as individual liability is a prerequisite to municipal liability.

## **STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039

---

[8] In an Order entered October 20, 2017, the Court dismissed several of Plaintiff's claims against Maplewood. (ECF No. 46). Furthermore, in an Order entered November 1, 2017, the Court dismissed Watson's claims against the individual Defendants. (ECF No. 49).
[9] In Counts V-VIII, Watson alleges violations of the corresponding provisions of the Missouri Constitution. (Compl., ¶¶ 118-147).
[10] Maplewood remains free to reassert its arguments at the summary judgment stage.

(8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

### I. Right To Travel

In Count III of her First Amended Complaint, Watson alleges that her constitutional right to travel was infringed by the Nuisance Policy. (First Amended Compl., ¶¶ 105-110). This Court previously held that the ordinance at issue did not violate Watson's fundamental right to travel. (*See* ECF No. 46, PP. 12-13). In light of Watson's amendment to her claim, however, the Court must consider "whether [the ordinance] meets the standard of rationally advancing some legitimate governmental purpose." *Doe v. Miller*, 405 F.3d 700, 714 (8th Cir. 2005) (internal quotations and citation omitted). The Eighth Circuit has described the standard this Court is to employ as follows:

> Such a law [that neither implicates a fundamental right nor involves a suspect or quasi-suspect classification] is accorded a strong presumption of validity, and is upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification….[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. Even if the rationale for [the law]

> seems tenuous, the law survives rational basis review so long as the legislative facts on which the [law] is apparently based could…reasonably be conceived to be true by the governmental decisionmaker.

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1019-20 (8th Cir. 2012) (internal quotations and citations omitted), *cert. denied*, 569 U.S. 974 (2013). *See also Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016) (quoting *Williamson v. Lee Optical*, 348 U.S. 483, 487-88, 75 S.Ct. 461, 99 L.Ed. 563 (1955)) ("'It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.'").

Upon consideration, the Court finds Watson's contention that Maplewood's health, welfare and safety-based justification fails rational basis review does not overcome the Nuisance Policy's "strong presumption of validity." *Gallagher*, 699 F.3d at 1020 (internal quotations and citation omitted). In other words, the City rationally could conclude that the ordinance assists in "promoting public peace and general welfare and protecting its residents from ongoing nuisance conditions." (*See* Maplewood's Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Maplewood's Memo in Support"), P. 11; *see also Hughes*, 840 F.3d at 996). This portion of Maplewood's Motion to Dismiss will therefore be granted.

## II.     Individual Liability As A Pre-Requisite To Municipal Liability

In its final argument in favor of dismissal, Maplewood asserts Watson cannot establish municipal liability in the absence of any individual liability.[11] Maplewood maintains dismissal is proper, as "'[t]his circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.'"

---

[11] As noted above, in an Order entered November 1, 2017, the Court dismissed Watson's claims against the individual Defendants. (ECF No. 49). Watson does not ask the Court to revisit this ruling. (*See* ECF No. 63).

(Maplewood's Memo in Support, P. 14, quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005), and citing *Patterson v. Von Riesen*, 999 F.2d 1235 (8th Cir. 1993)).

"Unlike government officials, municipalities do not enjoy absolute immunity from suit under section 1983." *Sample v. City of Woodbury*, 836 F.3d 913, 917 (8th Cir. 2016) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). In *Leatherman*, the Supreme Court made it "'quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983.'" *Id.* (quoting *Leatherman*, 507 U.S. at 166). According to the Eighth Circuit in *Sample*, the Supreme Court based this clear statement on prior decisions, including *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), where it held:

> How "uniquely amiss" it would be…if the government itself—"the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct"—were permitted to disavow liability for the injury it has begotten. A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed. Yet owing to the qualified immunity enjoyed by most government officials, many victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good-faith defense. Unless countervailing considerations counsel otherwise, the injustice of such a result should not be tolerated.

*Owen*, 445 U.S. at 651 (internal citations and footnote omitted). *See also Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Local governing bodies…can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers.").[12]

Upon consideration of the foregoing, the Court finds this portion of Maplewood's Motion to Dismiss must be denied. *See Sample*, 836 F.3d at 917 (citation omitted) ("Extending immunity protections to municipalities as the City proposes would leave innocent persons harmed by the abuse of governmental authority without a remedy for compensation for their injury."). *See also Webb v. City of Maplewood*, 2018 WL 2070564, at *2 (8th Cir. May 4, 2018) (citations omitted) ("We have long held for that reason that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom.").

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the City of Maplewood Missouri's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (ECF No. 57) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

---

[12] "*Monell* established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125 (2nd Cir. 2004) (citing *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (ECF No. 59) is **GRANTED**, and Traxler, Corcoran and Kruse are **DISMISSED** as Defendants in this action.

Dated this  11th  Day of May, 2018.

                                          /s/ Jean  C. Hamilton
                                          UNITED STATES DISTRICT JUDGE